UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
MONSERRATE LUNA,

                         :

               Plaintiff,          MEMORANDUM & ORDER

                         :

     -against-            04 Civ. 1803 (MHD)

                         :

AMERICAN AIRLINES and LSG
SKY CHEFS,                 :

              Defendants.  :
-------------------------------x
AMERICAN AIRLINES and LSG
SKY CHEFS,                 :

             Third-Party  :
             Plaintiffs,

                         :

     -against-                :

                         :

OVERHILL FARMS, INC.

                         :

             Third-Party
             Defendant.  :
-------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


    Plaintiff Monserrate Luna has sued American Airlines
("American") and LSG Sky Chefs ("Sky Chefs") for physical,
emotional and economic injuries that she allegedly suffered as a
result of the presence of some foreign matter in a chicken dinner
that she was served while flying from New York to her home in
Puerto Rico. In her verified complaint she alleges that the dish
contained unspecified "insects" (Compl. ¶ Tenth), although in her

1

deposition testimony she claimed that the foreign matter was a piece of a lizard. She asserts claims for negligence, breach of implied warranty and breach of an implied contract. Defendants in turn have impleaded Overhill Farms, Inc. ("Overhill"), which allegedly supplied the meal, in frozen form, to the defendants.

At the conclusion of discovery, the parties filed three summary-judgment motions. Plaintiff seeks summary judgment on liability. Defendants seek summary judgment dismissing the complaint and, alternatively, holding that they are entitled to indemnification by Overhill. In its turn, Overhill seeks summary judgment dismissing defendants' indemnification claims and, by extension, plaintiff's claims. For the reasons that follow, we deny the motions of plaintiff and Overhill and grant in part the motion of the defendants.

> The Evidentiary Record Concerning the Incident and its Aftermath

On July 20, 2003, plaintiff and her infant son were passengers on American Airlines flight # 1639, traveling from New York City to Puerto Rico. (Dep. of Monserrate Luna, Sept. 9, 2004 [Pl.'s Dep.], 18-19). While en route the passengers were offered a choice of two meals, and plaintiff selected a chicken dinner. (Id. at 26, 28).

She testified that the meal consisted solely of small cut-up pieces of chicken and a portion of string beans. (Id. at 28-29, 31-33). Testimony by witnesses for Sky Chefs and Overhill, the food supplier, reflects that the chicken dinner served on this flight also included rice, red and green peppers, and black pepper, as well as peas and carrots. (Dep. of Brian Farinha, June 10, 2005, 44, 45, 63; Dep. of James Rudis, June 10, 2005, 60, 66, 67, 69).

According to Ms. Luna, as she was eating the chicken, she put a piece in her mouth and found that she could not chew or swallow it, and she instead spat it out. (Pl.'s Dep. at 30-31). Her 5-year-old son said that the piece looked like a small animal. (Id. at 31). According to plaintiff, when she looked at it, it did resemble a piece of a lizard, of a type that is common in Puerto Rico. (Id. at 31-32). A post-flight report by a cabin crew member, however, states that plaintiff showed the crew only a feather and complained that she had found it in her meal. (Defs.' R. 56 Statement, Ex. E).

After spitting out the item, plaintiff placed it in a napkin and brought it back to a cabin crew member (Pl.'s Dep. at 32), who said that it was a feather, even though Ms. Luna disagreed. (Id. at 34). She  reports that the crew member with whom she spoke offered to wrap the item if she wished to retain it for purposes of making

a complaint. (Id. at 35). She declined the offer, however, and the crew apparently eventually disposed of the item. (Id. at 35, 45-46. See also Defs.' Opp'n to Overhill's Summ. J. Mot., 8-9).

Plaintiff claims that she felt shocked and upset by this event, and that she eventually went to the airplane restroom in an effort to vomit "because I knew that I had eaten something gross." (Pl.'s Dep. at 39). She says that she vomited "a little bit" in the restroom, but did not indicate that she had regurgitated anything of note. (Id. at 35; Dep. of Monserrate Luna, June 6, 2005 [2d Pl.'s Dep.], 35-36).

Ms. Luna testified that she soon noticed a rash on her hands and other parts of her anatomy, in the form of red spots. (Pl.'s Dep. at 34, 36, 38, 47-48; 2d Pl.'s Dep. at 32-33). She mentioned this to the cabin crew, who offered her an allergy pill, apparently Benadryl, which she did not take. (Pl.'s Dep. at 34, 36-37). She also says that she was "very nervous" (id. at 32) and that her blood pressure "went down". (Id. at 38).

When plaintiff complained to the cabin crew of feeling ill, the crew called ahead for a paramedic to meet the plane in San Juan. (Id. at 37-38). According to plaintiff, the medical personnel

4

who saw her at the airport said that her blood pressure was low and that she had "a little bit" of an allergic reaction. (Id. at 41-42). They gave her a Benadryl, which she took. (Id. at 46).

Some time after arriving home, plaintiff claims, she felt bloated and suffered from diarrhea and stomach pain. According to plaintiff, these intestinal symptoms persisted, and indeed have continued more or less without stop since then. (Id. at 48-50, 55-57).

Plaintiff went to see one of her doctors in Puerto Rico two days after the flight. (Id. at 63). She says that he told her that she had "some bacteria" inside her and gave her Zantac for her stomach (id. at 51-52), and that he saw her again two weeks later for continuing diarrhea. (Id. at 52). She further testified that although her doctor gave her a reference for psychiatric treatment, she never went. (Id. at 54; 2d Pl.'s Dep. at 49-50).

Plaintiff asserts that she is still afraid of eating (2d Pl.'s Dep. at 71), and that her distress prevented her for a time from attending to the affairs of a spa business that she owned in Puerto Rico. The extent of this closure of her business is entirely unclear since at one point she claimed to have lost "several days"

5

(Pl.'s Dep. at 12), but later claimed she lost three to four months (id. at 67-68), and still later admitted that she had not yet opened her business at the time of the incident on the plane. (2d Pl.'s Dep. at 72).

As for plaintiff's prior medical history, from her testimony it appears fairly extensive. She reported that in 2002 she had undergone gall bladder surgery and that she had also had a cyst on her pancreas surgically removed that same year. (Pl.'s Dep. at 19, 21, 50-51, 57-58). In the wake of these procedures she was placed on what she describes as a strict diet that excluded rice, red and green peppers, black pepper, broccoli and other gas-inducing foods. (2d Pl.'s Dep. at 24-25, 37-38). When asked at her deposition whether the diet also called for her to avoid eating string beans, she was equivocal, first saying "no" and then modifying that response to a "maybe". (Id. at 38). From her testimony, it appears that she has not adhered to that diet or one given her by Dr. Raul Manes, her "family physician" (Dep. of Raul B. Manes Horta, Aug. 31, 2005 [Manes Dep.], 17), which she indicated was too strict. (See 2d Pl.'s Dep. at 31-32; Pl.'s Dep. at 69). She further admitted that she has had a continuing condition of gastritis, long predating the incident on the airplane, and that she has suffered over the years from bloating and diarrhea as a result. (Pl.'s Dep.

6

at 57-58, 62-63; 2d Pl.'s Dep. at 31-32, 44-49). Indeed, she mentioned suffering from bloating for three months in 2000 (2d Pl.'s Dep. at 45-46), and recounted repeated clinic visits in 2000 and 2001 for these problems. (Id. at 46, 49). Similarly, since she underwent gall bladder surgery, she suffered continuing bloating and inflammation of the stomach. (Id. at 48, 54).

The doctor whom plaintiff consulted after arriving in San Juan, a physician named Raul B. Manes Horta, also testified in a deposition. Dr. Manes, who is an internist, reported that he had previously treated plaintiff occasionally for a variety of maladies, starting in 1977, and that she had suffered from a number of intestinal or gastric problems over the years. Thus he confirmed that in 2001 she had undergone a laparoscopy because of abdominal pain, and that the procedure had uncovered a pancreatic cyst, which was then removed. (Manes Dep. at 35-36). He recounted that he had seen her on July 31, 2002 because she was vomiting and complaining of nausea and dizziness. (Id. at 36, 39). He was not aware of the gall bladder surgery that plaintiff had reported undergoing that year, and it is unclear whether that surgery was related to the condition that she had reported to him that July. (Id. at 51-52). He also was unaware of Ms. Luna's prior treatment in 2000 and 2001 for gastrointestinal problems, including bloating (id. at 40), as

7

well as her abdominal CT scan in 2002. (Id. at 40). He also was
unfamiliar with her treatment by another internist (Dr. Davila) or
her surgeon (Dr. Brigido Pagan). (Id. at 48-49).

It is apparent that the original dietary limitations that
plaintiff described had been given her by Dr. Pagan, the surgeon
who had performed the pancreatic or gall bladder procedures, rather
than by Dr. Manes (see id. at 56; 2d Pl.'s Dep. at 38), but Dr.
Manes confirmed that he had repeatedly reminded her of the need to
avoid "strong foods". (Manes Dep. at 69, 73-78 (referring, as
examples, to meats, fat, condiments and spices)). Dr. Manes also
confirmed that if plaintiff ate food that was not on her diet, it
could cause gastrointestinal upset, including nausea and vomiting.
(Id. at 67-68. See id. at 73-74).

Dr. Manes testified that he had seen plaintiff two days after
her July 20, 2003 flight and that she had recounted to him that she
had chewed on a lizard from her meal. (Id. at 34, 44-45). He also
mentioned plaintiff's report that she had suffered in the past from
anorexia and dyspepsia. (Id. at 46). According to the doctor, he
did not conduct any internal or blood tests on that occasion (id.

at 53-54)[1], although he manually examined her abdomen externally and found no masses or any other sign of an internal physical problem. (Id. at 50). He noted that she had a rash consisting of spots on the upper portion of her chest which he described as "something simple", for which he prescribed Benadryl (id. at 52, 71-72), and he opined that her reported physical complaints were likely caused by her psychological reaction to the event on the airplane. (Id. at 61, 98-99, 110). He further described her as appearing anxious on that occasion, and he testified that he had given her Benadryl in part to serve as a tranquilizer. (Id. at 46-47).

Dr. Manes reported that he had seen plaintiff again nearly two weeks later for continuing complaints of stomach problems, and that he also saw her several times in 2004 when she was again complaining of diarrhea and bloating for a period of several months. (Id. 73-75). It appears that on these visits Dr. Manes reiterated to plaintiff that she needed to observe her dietary restrictions, including avoidance of spices, "strong foods"[2], and

---

[1] Dr. Manes referred plaintiff for lab tests but apparently she never went. (Manes Dep. at 59).

[2] Dr. Manes cited as possible examples grains, avocado and beans. (Manes Dep. at 81). As noted, the more specific dietary restrictions referred to by plaintiff were imposed by Dr. Pagan.

9

alcohol. (Manes Dep. at 78). He also confirmed that from 2001 -- following the pancreatic surgery -- to the present plaintiff was seeing a gastroenterologist because of continuing gastric problems following her pancreatic cyst removal. (Id. at 79). Finally, he confirmed that he had referred plaintiff for psychiatric consultation, but apparently not until January 2005. (Id. at 15, 54).

ANALYSIS

A. Summary Judgment Standards

Before addressing the various summary-judgment motions, we summarize the pertinent standards for assessing such a motion. The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under

---

(2d Pl.'s Dep. at 37-38).

10

the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Shade v. Hous. Auth. of the City of New Haven</u>, 251 F.3d 307, 314 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986); <u>see</u>, <u>e.g.</u>, <u>Anderson</u>, 477 U.S. at 255; <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); <u>see</u>, <u>e.g.</u>, <u>Celotex</u>, 477 U.S. at 323; <u>Koch v. Town of Brattleboro</u>, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. <u>See</u>, <u>e.g.</u>,

11

Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet its initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003).

If the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot rest "merely on allegations or denials" of the factual assertions of the movant, Fed. R. Civ. P. 56(e); see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor can she rely on his pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). She must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc.,

411 F.3d 69, 75 (2d Cir. 2005). Rather, she must present specific evidence in support of her contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).

   B. Plaintiff's Motion

   Plaintiff seeks partial summary judgment, asserting that the facts material to defendants' liability on her negligence and implied-warranty claims are not in triable dispute. (See Pl.'s R.56 Memorandum of Law, 2-3). This motion is plainly baseless.

   Both of plaintiff's asserted claims are premised on the contentions that defendants supplied her with a meal that contained a foreign substance, which she claims to be a lizard, and that the presence of that item in her food caused her physical injury and emotional distress, as well as financial harm. The evidence offered does not remotely satisfy plaintiff's burden as a matter of law on either the negligence or the implied-warranty claims.

   To establish a claim of negligence, plaintiff would have to demonstrate that the defendant had a duty of care to her, that it

failed to carry out that duty, that she suffered some damage (which may involve physical injury, in some circumstances psychic injury, or financial loss) and that the failure of duty was a proximate cause of the injury. See, e.g., Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 392 (1985); Dalton v. Stedman Mach. Co., 2008 WL 351676, *6 (N.D.N.Y. Feb. 7, 2008). As for the implied-warranty claim, plaintiff would have to demonstrate that a product was introduced into commerce, that it was not fit for its ordinary purpose (in this case not fit for consumption), that defendant either manufactured or distributed the product, that plaintiff used (or consumed) it and that she was injured as a result. N.Y. U.C.C. § 2-314(2)(c). See, e.g., Denny v. Ford Motor Co., 87 N.Y.2d 248, 258-59, 639 N.Y.S.2d 250, 256 (1995); Vamos v. Coca-Cola Bottling Co., 165 Misc. 2d 388, 390-91, 627 N.Y.S.2d 265, 268 (Civil Ct. N.Y. County 1995); Stream v. Sportscar Salon, Ltd., 91 Misc. 2d. 99, 104, 397 N.Y.S.2d 677, 681 (Civil Ct. N.Y. County 1977).

Finally, although plaintiff has not explicitly pled a claim for strict product liability, her factual allegations may be read as stating such a claim. To prevail on that theory -- which closely resembles the implied-warranty claim -- plaintiff would have to demonstrate that a defective product entered the stream of

commerce, that she used or consumed it and was injured as a result, and that defendant was involved in the manufacture, sale or distribution of that product. See, e.g., Gebo v. Black Clawson Co., 92 N.Y.2d 387, 392, 681 N.Y.S.2d 221, 224 (1998); Pierre-Louis v. DeLonghi Am., Inc., __ A.D.3d __, 887 N.Y.S.2d 628, 630, 2009 WL 3380997, *1 (2d Dep't Oct. 20, 2009).

If plaintiff's basic factual contentions in this case were proven, then she might be entitled to judgment on liability, at least on an implied-warranty claim or a strict product-liability theory. The airline supplied food to her, and if the food contained a foreign substance that proximately caused her injury, the airline might be deemed to be part of the chain of distribution and be held strictly liable. Moreover, there is also no meaningful question that the airline and Sky Chefs, in supplying food to paying customers, impliedly warranted that the food was fit for consumption, and hence if it contained a foreign substance that caused injury to a customer, then they would be liable for breach of that warranty.[3]

---

[3] Although there is no question that the airline owed plaintiff a duty in providing her food, whether plaintiff could prevail against defendants on her negligence claim would depend on her ability to establish not only the unfitness of the food and resulting injury, but also that the defendants acted negligently in their handling of the food, a proposition for

The obvious difficulty for plaintiff's motion is that the material facts are at least in triable dispute. First, the record suggests that plaintiff never ingested whatever item she found in her food, thus throwing into serious question whether it could have caused her physical harm. Indeed, she testified that she was unable to chew or swallow it and instead spat it out, although on further questioning she speculated that she had perhaps swallowed a piece of it since the piece that she examined appeared to be only a portion of a lizard. (Pl.'s Dep. at 33). This speculation cannot justify summary judgment for plaintiff. See, e.g., Calafiore v. Zone Enters. of New York, LLC, 2007 WL 1459252, *2-4 (S.D.N.Y. May 17, 2007) (denying summary judgment for plaintiff claiming injury from biting a piece of bark in a sandwich; record left open the question whether plaintiff had chewed the bark and had suffered injury as a result). Moreover, the cabin crew reported that the item plaintiff showed them was in fact merely a feather, not a lizard or any other animal, again calling into question whether she had consumed anything other than her meal.[4]

which plaintiff offers no evidence and makes no specific argument.

[4] Plaintiff questions the credibility of the cabin crew report (Pl.'s Opp'n to Defs.'/Third-Party Pl.'s Mot. for Summ. J., 3), but that argument goes to the weight of the document, which plainly puts in issue the nature of the item displayed by plaintiff. We also note that plaintiff's argument is misguided

We note as well that the various maladies that plaintiff cites as evidence of physical injury appear to mirror prior physical ailments from which she concededly suffered long before the flight, including bloating and diarrhea. Moreover, her physical complaints during and after the flight may well be linked to her having eaten food that was forbidden by her doctors, including rice, red and green peppers, black pepper and, according to her, string beans. (See Farinha Dep. at 44-45, 63; Rudis Dep. at 60, 66-67, 69).

We note also that the record leaves open whether the alleged foreign item that plaintiff discovered and brought to the attention of the cabin crew even originated in her food. As noted, the crew reported, and even told her at the time, that it was a feather. If so, it might well have come from a pillow or other item carried on the flight by another passenger. Moreover, if it was feather, it appears obvious that its presence would be unlikely to lead either to it being eaten or to any resultant physical harm to the passenger.

---

insofar as she points to the date of the report, some weeks after the incident, and suggests that the airline made up a story in the interim about the object being a feather. As plaintiff herself testified, when she first showed the item to the cabin crew members during the flight, one of them told her that it was a feather.

Finally, we note the absence of any competent medical evidence that the presence of any of the foreign items that might possibly have been in the food was capable of causing the physical symptoms about which plaintiff complains. See, e.g., Valenti v. Great Atl. & Pac. Tea Co., 207 A.D.2d 340, 341, 615 N.Y.S.2d 84, 85 (2d Dep't 1994) (summary judgment for defendant against plaintiff who claimed that she saw and possibly ate worm in canned food shortly before suffering "flu-like symptoms"; court notes "There are many different causes of nausea, vomiting and stomach distress."). Accord Ruggiero v. Perdue Poultry Co., 1997 WL 811530, * 2 (S.D.N.Y. Sept. 29, 1997) (denying plaintiff's motion for partial summary judgment in contaminated food case where there was no evidence of proximate cause to support plaintiff's claims of a rash and prolonged vomiting and diarrhea). Indeed, plaintiff's internist testified that he undertook no testing and found no physical manifestations of harm other than a "simple" rash. Furthermore, he attributed plaintiff's symptoms following her flight to her psychiatric state, possibly contributing to his January 2005 referral of plaintiff to a psychiatrist, which she then apparently ignored. (Manes Dep. at 15, 54-55; 2d Pl.'s Dep. at 49-50).

In sum, there is no basis for granting summary judgment to

plaintiff.[5]

C. Overhill's Motion

Third-party defendant Overhill seeks summary judgment against the airline and Sky Chefs principally on the basis of spoliation, specifically, the failure to preserve the item that Luna claimed to have found in her food. (Third-Party Def.'s Mem. of Law in Supp. of Mot. for Summ. J. [Overhill Mem.], 2-3; Reply Aff. of Sung Hee Koh, Esq., in Supp. of Third-Party Def.'s Mot. for Summ. J., dated Oct. 20, 2005, ¶¶ 4, 9). Overhill also argues, both on its own motion and in opposition to defendants' motion for indemnification (1) that the testimony of the plaintiff demonstrates that the meal was not supplied by the third-party defendant (Overhill Mem. at 4; Koh Reply Aff. at ¶ 6), (2) that there is insufficient evidence to establish that any defect in the meal was not the result of intervening causes (notably handling of the meal by Sky Chefs and the airline) (Aff. of Sung Hee Koh, Esq., in Opp'n to Pl.'s and Third-Party Pls.' Mots. for Summ. J., dated Oct. 13, 2005, ¶¶ 13-19) (3) that there is insufficient evidence that the plaintiff's intestinal complaints and rash were attributable to a foreign

---

[5] Plaintiff's remaining claim, for implied contract, is entirely unexplained by her.

object in the meal (Overhill Mem. at 5), and (4) that there is no evidence that Overhill was contractually obliged to indemnify American. (Koh. Aff. in Opp'n to Pl.'s and Third-Party Pls.' Mots. For Summ. J. at ¶ 4).[6]

We address the third point -- that is, the adequacy of plaintiff's own case -- when assessing the defendants' motion for summary judgment. As for Overhill's challenges to the third-party claims, they do not justify summary judgment.

The documentary and testimonial evidence is sufficient to permit a trier of fact to conclude that the meal in question was supplied by Overhill. (See Farinha Dep. at 45-46, 59-61, 85-89, 114-15; Aff. of Brian Farinha in Supp. of Defs./Third-Party Pls.' Mot. for Summ. J., dated Sept. 23, 2005, ¶¶ 4-7; Aff. of Dale

_____

[6] Solely in opposition to defendants' motion, Overhill also asserts, in brief and conclusory fashion, that the airline filed its claim in an incorrect venue (Koh Aff. in Opp'n to Pl.'s and Third-Party Pls.' Mot. for Summ. J., ¶ 8 (citing Defs.' R. 56 Statement Ex. B at p. 2 ¶ 22)), but it fails to explain why such a defense -- asserted for the first time on summary judgment -- should not be deemed waived. It also argues that the contractual indemnification claim is time-barred by contract, based on when the incident occurred. (Id. at ¶ 7 (citing Defs.' R. 56 Statement Ex. B at p. 2 ¶ 20)). Again, however, it fails to explain why the one-year deadline (from the accrual of the cause of action) that it invokes to bar an indemnification claim should not run from when plaintiff filed suit.

Norgard in Supp. of Defs.'/Third-Party Pls.' Mot. for Summ. J., dated July 20, 2005, ¶ 5; Aff. of Dale Norgard in Supp. of Defs.'/Third-Party Pls.' Mot. for Summ. J., dated Oct. 19, 2005, ¶¶ 4-5). The record also would permit a finding that neither Sky Chefs nor the airline ever handled the food in a manner that would have contributed to the presence of foreign matter in it. (Farinha Dep. at 55, 61, 69-70; Rudis Dep. at 41-42, 77-82; Farinha Aff. at ¶¶ 8-11). Thus, the record presents at least triable questions on these issues.

To the extent that Overhill suggests that the contract between it and the airline did not include an indemnification provision, the argument does not justify summary judgment. At most the evidence on the current record is equivocal. (Compare Defs.' R. 56 Statement, Ex. B at p. 2 ¶ 12 with Koh Aff. in Opp'n to Pl.'s and Third-Party Pls.' Mot. for Summ. J. at ¶ 4 & Rudis Dep. at 82-84). In any event Overhill never demonstrates why the defendants may not assert common-law indemnification claims against it. See Gen. Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. Aon Reinsurance Agency, 860 F. Supp. 983, 986 (S.D.N.Y. 1994) (discussing New York common-law indemnification).

Finally, Overhill's spoliation argument fares no better. The

known facts concerning the airline's disposition of the purportedly offending item do not justify dismissal of the third-party claims.[7] The pre-litigation disposal of what proves to be significant or crucial evidence may trigger dispositive relief but only in fairly extreme circumstances. See, e.g., West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779-80 (2d Cir. 1999); Schwarz v. Fedex Kinko's Office, 2009 WL 3459217, *10 (S.D.N.Y. Oct. 27, 2009). In general, the courts look to (1) whether the party that destroys the evidence knew or had reason to anticipate at the time that litigation would ensue and that the item would be relevant to that litigation, (2) whether the spoliator acted in bad faith or negligently, (3) the importance of the evidence to the party's claim or defense, and (4) the degree of prejudice engendered by the spoliation, which depends on whether other evidence addressing the same question is available to the parties. See, e.g., Schwarz, at *6-11; Saul v. Tivoli Sys., 2001 U.S. Dist. LEXIS 9873, *13-16 (S.D.N.Y. July 17, 2001). As for the nature of the remedy if spoliation is found, the court has broad discretion but should "tailor sanctions to insure that spoliators do not benefit from their wrongdoing -- a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case."

---

[7] Since Sky Chefs had no involvement in that decision, the spoliation argument cannot possibly apply to it.

22

Reilly v. NatWest Mkts. Group, 181 F.3d 253, 267 (2d Cir. 1999).

Accord Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 383-84 (2d Cir. 2001); Golia v. Leslie Fay Co., 2003 WL 21878788, *10-11 (S.D.N.Y. Aug. 7, 2003).[8]

In this case it is not at all clear that the cabin crew on plaintiff's flight had any reason to anticipate that litigation would follow from the discovery by plaintiff of what the crew thought was a feather in her meal. It is also apparent that the crew acted reasonably in offering plaintiff the opportunity to preserve the item if she wished, and indeed her refusal of that offer was a clear signal to the airline that she did not attach to it the importance that might signal an inclination later to pursue litigation. Furthermore, although the item, if available, would be highly significant for plaintiff's claims, it represented something

_____

[8] This diversity case presents a potential choice-of-law question concerning whether federal or New York law on spoliation should govern. There is some recent authority for the proposition that federal law should govern the imposition of spoliation sanctions by federal courts. Schwarz, 2009 WL 3459217, at * 6 n.4 (citing cases). We need not resolve that issue, however, since both jurisdictions adhere to comparable standards. See, e.g., Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); Baglio v. St. John's Queens Hosp., 303 A.D.2d 341, 342 755 N.Y.S.2d 427, 428 (2d Dep't 2003); New York Cent. Mut. Fire Ins. Co. v. Turnerson's Elec., Inc., 280 A.D.2d 652, 653, 721 N.Y.S.2d 92, 93 (2d Dep't 2001).

that plaintiff obviously did not ingest, and hence cannot have been the direct source of any physical injury to her. Finally, Overhill is not totally bereft of evidence as to the nature of the item. Indeed, all parties are citing the report of the cabin crew, which identifies the object as a feather, and the parties were free, if they wished, to depose the cabin crew members to obtain further confirmation of their observation and could also probably call them as witnesses at trial.

In sum, this is not a case in which the airline's disposition of the item -- whether a piece of chicken or a feather or a lizard (or insects, as per the complaint) -- should trigger dispositive sanctions. See, e.g., Barsoum v. New York City Hous. Auth., 202 F.R.D. 396, 401 (S.D.N.Y. 2001); Saul, 2001 U.S. Dist. LEXIS 9873, at *54-56.

Defendants' Motion

    1. As Against Plaintiff

The airline and Sky Chefs seek summary judgment on plaintiff's claims on a variety of grounds. First, they assert that they should not be liable because they did not make or package the meal and

could not have been the source of any foreign object in it. (Defs.'
R.56 Memorandum of Law, 7-8, 12). Second, they argue that plaintiff
cannot establish that the meal contained a lizard or other harmful
item, as opposed to a feather. (Id. at 7, 12). Third, they insist
that she cannot demonstrate that whatever was in the food was the
proximate cause of any physical or emotional injury. (Id. at 8-10,
12-13). Finally, they say that plaintiff cannot demonstrate the
financial loss to her business that she seems to be claiming or
out-of-pocket expenses. (Id. at 10-12).

We reject defendants' contention that they cannot be held
responsible for any harm to plaintiff because they did not prepare
or package the meal. The airline supplied the meal to plaintiff as
part of the quid pro quo that it rendered to her in exchange for
her payment of its airfare. On that basis it may be held
responsible, on a theory of implied warranty or strict product
liability, for the fitness of the food that it serves on its
planes. See, e.g., Pierre-Louis, __ A.D.3d __, 887 N.Y.S.2d at 630,
2009 WL 3380997, at *1 (strict product liability for sale of
defective items applies to distributors and retailers as well as to
manufacturer) (citing Godoy v. Abamaster of Miami, Inc., 302 A.D.2d
57, 60, 754 N.Y.S.2d 301, 304-05 (2d Dep't 2003)); Candela v. City
of New York, 23 Misc.3d 1107(A), 2009 WL 981344, *3 (Sup. Ct. N.Y.

25

County Mar. 31, 2009) (citing <u>Gebo</u>, 92 N.Y.2d at 392, 681 N.Y.S.2d at 224).[9]

In addition, it appears that the contract between the airline and Overhill gave American the right to inspect the food preparation process. (Defs.' R. 56 Statement, Ex. B at p. 2 ¶¶ 7, 27). This may offer a separate basis for holding the airline legally responsible for the alleged contamination of the food in Ms. Luna's meal, if plaintiff can demonstrate negligence on the part of the airline. Although she has not proffered any evidence of a failure by American adequately to inspect Overhill's operation, she was not called upon to do so on this motion since American

_____

[9] We note that plaintiff does not explicitly plead a claim for strict product liability although she does invoke it in her summary-judgment briefing. (<u>See</u> Pl.'s Reply "Affirmation" in Supp. of Mot. for Summ. J., 6-7). Although the complaint is not a model of precision, plaintiff's failure to attach the correct legal label to her factual allegations is not fatal to her claim. If the facts alleged suffice to trigger potential liability, she may press the claim even if the complaint did not so identify it. <u>See</u>, <u>e.g.</u>, <u>Morris v. Schroder Capital Mgmt. Int'l</u>, 445 F.3d 525, 530 n.3 (2d Cir. 2006)("A complaint need not set out the correct legal theory on which the claim is based, so long as the complaint provides full notice of the circumstances giving rise to the plaintiff's claim.").

It also bears mention that claims for breach of an implied warranty of fitness (which plaintiff explicitly pleads) and for strict product liability based on a manufacturing defect closely parallel each other. <u>See</u>, <u>e.g.</u>, <u>Barnett v. Black & Decker (U.S.) Inc.</u>, 2008 WL 5170200, *12 (S.D.N.Y. Dec. 9, 2008).

never asserted in its initial motion papers that it had inspected
Overhill's facilities.

Defendants' arguments about the merits of plaintiff's
underlying case have more bite to them. To sustain her claims
plaintiff must, at the very least, demonstrate that her meal
contained foreign matter and that the presence of the foreign
matter proximately caused injury to her. We conclude that on this
basis a major portion of her claims cannot survive.

Since we must treat plaintiff's competent evidence as true for
purposes of the current motion, we assume that she encountered a
piece of food or other substance in her chicken dish that she found
herself unable to eat or swallow, and that it appeared to her not
to be a piece of chicken. Plaintiff further contends that it
appeared to her to resemble a piece of a lizard -- a reported
impression that we assume, for purposes of this motion, she
actually registered, even though the actual nature of the item is
a matter of pure speculation on the current record. Ms. Luna
testified that her infant son first said that the item looked like
a small animal, and that she then saw a resemblance to a lizard,
but that testimony is not competent evidence sufficient to permit
a trier of fact to find that the item was in fact a lizard.

27

Nonetheless, the impression gleaned by plaintiff may be pertinent to her allegation that she suffered emotional distress as a result of the incident.

Given Ms. Luna's testimony, then, as well as the report of the cabin crew, a trier of fact could find that she had discovered foreign matter of an indeterminate nature in her mouth while eating her meal. It remains to be seen, however, whether she can satisfy the other requirements for her claims.

As noted, all versions of plaintiff's claims -- including negligence, implied-warranty breach and strict product liability -- require plaintiff to demonstrate injury as a result of her exposure to food not fit for consumption. Under New York law, which both sides invoke as applicable to these claims, a complainant may recover for physical injury caused directly by the defendant's wrongful conduct or resulting from psychic shock or distress. See generally Ferrara v. Bernstein, 179 A.D.2d 79, 87, 582 N.Y.S.2d 673, 678 (1st Dep't 1992) (Murphy, J., concurring). Moreover, in limited circumstances the plaintiff may recover for psychological injury even in the absence of physical harm if she can establish that the defendant violated a duty owed directly to her. See, e.g., Kennedy v. McKesson Co., 58 N.Y.S.2d 500, 504-06, 462 N.Y.S.2d 421,

423-24 (1983); Battalla v. State of New York, 10 N.Y.2d 237, 238-42, 219 N.Y.S.2d 34, 35-38 (1961).[10] However, to prevail in the absence of proven physical injury, the plaintiff must offer substantial and highly probative evidence of a proximate causal link between the violation of a duty and the psychic injury that she invokes. See generally Battalla, 10 N.Y.2d at 242, 219 N.Y.S.2d at 38; Chance v. Frank's Beauty Salon, 35 A.D.2d 304, 305, 316 N.Y.S.2d 236, 238 (3d Dep't 1970). See also Iannotti v. City of Amsterdam, 225 A.D.2d 990, 990-91, 639 N.Y.S.2d 537, 538 (3d Dep't 1996).

The contours of this heightened requirement for proof of psychological injury have been variously stated. Thus the Second Department phrases it as follows:

---

[10] Requiring that the defendant owe a duty directly to the plaintiff distinguishes these claims from so-called bystander cases in which a plaintiff suffers unintended harm solely as a result of injuries sustained by another. See Johnson v. State, 37 N.Y.2d 378, 383, 372 N.Y.S.2d 638, 642-43 (1975) (discussing Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 556 (1969)). Cf. Bovsun v. Sanpen, 61 N.Y.2d 219, 230-31, 473 N.Y.S.2d 357, 362 (1983) (permitting so-called "zone of danger" bystander claim).

This type of claim is also distinct from one in which a plaintiff seeks recovery for pecuniary injury or emotional distress based on defendant's violation of a duty owed to her, but where defendant's actions also caused physical injury to a third party. See Kennedy, 58 N.Y.2d at 504-06, 462 N.Y.S.2d at 423; Battistello v. East 51st St. Dev. Co., 24 Misc. 3d 858, 863-64, 2009 WL 1311792, * 4-5 (Sup. Ct. N.Y. County May 12, 2009).

> While physical injury is not a necessary element of a cause
> of action to recover damages for negligent infliction of
> emotional distress, such a cause of action must generally
> be premised upon a breach of a duty owed directly to the
> plaintiff which either unreasonably endangers a plaintiff's
> physical safety or causes the plaintiff to fear for his or
> her own safety.

E.B. v. Liberation Pubs., Inc., 7 A.D.3d 566, 567, 777 N.Y.S.2d

133, 135 (2d Dep't 2004); (citing Lancellotti v. Howard, 155 A.D.2d

588, 589-90, 547 N.Y.S.2d 654, 655 (2d Dep't 1989)). See also

Afflick v. Port Auth. of New York & New Jersey, 5 Misc.3d 1002(A),

2004 WL 2295857, *4-5 (Civil Ct. Kings County Oct. 12, 2004);

Thomas v. Supermarkets Gen. Corp., 154 Misc.2d 828, 831, 586

N.Y.S.2d 454, 457 (Sup. Ct. Nassau Cty. 1992). In contrast, courts

in the First Department have not required a plaintiff to

demonstrate a risk to her safety. See Perry-Rogers v. Obasaju, 282

A.D.2d 231, 231-32, 723 N.Y.S.2d 28, 29 (1st Dep't 2001) (to

recover for emotional harm in the absence of physical injury

"[t]here is no requirement that the plaintiff must be in fear of

his or her own physical safety"); Garcia v. Lawrence Hosp., 5

A.D.3d 227, 227-28, 773 N.Y.S.2d 59, 60 (1st Dep't 2004). However,

while acknowledging that plaintiffs can recover for solely

emotional injury, courts in the First Department have been reticent

to specify a method of establishing psychological injury apart from

evidence of physical harm. See Perry-Rogers, 282 A.D.2d at 232, 723

30

N.Y.S.2d at 29 (offering plaintiff's "contemporaneous or consequential physical harm" as only example of way for plaintiff to substantiate claim for solely psychological harm); Garcia, 5 A.D. at 228, 773 N.Y.S.2d at 60 (same).[11] More generally, the New York Court of Appeals has observed that in dealing with claims of psychological injury with no physical component, the courts should "'look for some guarantee of genuineness in the circumstances of the case'", Ferrara v. Galluchio, 5 N.Y.2d 16, 21, 176 N.Y.S.2d 996, 999-1000 (1958) (quoting Prosser, Torts § 34 at 212-13), and this appears to be the operative, if somewhat general, standard. See Leahy v. Fed. Express Corp., 613 F. Supp. 906, 909 (E.D.N.Y. 1985). In this regard, psychiatric testimony may suffice for such a "guarantee of genuineness", but a plaintiff's uncorroborated testimony of upsetness will not. See, e.g., id. at 909-10 (citing

---

[11] We note that when apparently describing a claim in which a plaintiff seeks to recover for solely psychological damage against a defendant who has caused physical injury to a third party, the First Department has cited a more liberal standard for a plaintiff to substantiate her claims. The Department has quoted the New York Court of Appeals to the effect that "'there may be recovery for the emotional harm, even in the absence of fear of potential physical injury, to one subjected *directly* to the negligence of another as long as the psychic injury was genuine, substantial and proximately caused by the defendant's conduct.'" Battistello, 24 Misc. 3d 858 at 864, 2009 WL 1311792, at *5 (quoting Howard v. Lecher, 42 N.Y.2d 109, 111-12, 397 N.Y.S.2d 363, 364-65 (1977), & citing Stanley v. Smith, 183 A.D.2d 675, 584 N.Y.S.2d 60 (1st Dep't 1992), and Fowler v. Town of Ticonderoga, 131 A.D.2d 919, 516 N.Y.S.2d 368 (3d Dep't 1987)).

inter alia Johnson v. State, 37 N.Y.2d at 381, 372 N.Y.S.2d at 640-41).[12]

Most of the case law addressing the availability of a remedy for emotional distress has involved claims of negligence. Nonetheless, it appears that a comparable analysis is available in assessing claims for product liability, including those based on ingestion of foreign substances in food. See, e.g., Ruggiero, 1997 WL 811530, at *1 n.1 (citing Gay v. A&P Food Stores, 39 Misc.2d

_____

[12] It bears mention that in a later decision the Third Department suggested that the "guarantee of genuineness" will "invariably requir[e] some competent evidence of contemporaneous or consequential physical harm". Iannotti, 225 A.D.2d at 990, 639 N.Y.S.2d at 538 (citing cases). In that case the Court did not seek to reconcile this observation with seemingly contrary descriptions of the standard in other cases, including by the New York Court of Appeals, and the decisions that the panel cited did not themselves appear to compel a requirement of physical harm. In any event the Third Department still later abjured any requirement of physical injury. See Graber v. Bachman, 27 A.D.3d 986, 987, 812 N.Y.S.2d at 660 (3d Dep't 2006)("plaintiff may recover damages for emotional distress, even in the absence of a corresponding physical injury"; court notes that "genuineness" requirement will usually be satisfied "when 'there exists "an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, [since it] serves as a guarantee that the claim is not spurious"'")(quoting Johnson, 37 N.Y.2d at 382, 372 N.Y.S.2d at 642 (quoting Prosser, Torts § 54 at 330 [4th ed.]))). In doing so, however, the Court appeared to apply an extraordinarily rigorous standard for causation, by finding inadequate the plaintiff's proof that a tractor trailer had crashed into her house while she was sleeping in a different room, but only three to four feet from the impact. Id. at 986-88, 812 N.Y.S.2d at 659-61.

360, 361-64, 240 N.Y.S.2d 809, 811-14 (Civil Ct. Bx. County 1963)).
This follows from the evident applicability of the reasoning of
Battalla and its progeny beyond pure negligence claims, and from
the recognized similarity between claims of strict liability and of
negligence. See generally Denny, 87 N.Y.2d at 256-59, 639 N.Y.S.2d
at 255-56.[13] Moreover, the New York courts have consistently
recognized the potential viability of independent claims for
negligent infliction of emotional distress in the context of sales
or leases of defective products. See, e.g., Slotkin v. Mercedes-
Benz of N. Am., Inc., 269 A.D.2d 588, 589, 704 N.Y.S.2d 510, 510
(2d Dep't 2000); Fusco v. Gen. Motors Corp., 126 Misc.2d 998, 998-
1003, 485 N.Y.S.2d 431, 432-36 (Sup. Ct. West. County 1984).

     In this case plaintiff cannot sustain her burden to establish
that she suffered physical injury as a result of being exposed to
a foreign item in her food. The initial problem is that she cannot
prove that she actually consumed a foreign item. By her own
testimony she discovered the object when she placed it in her
mouth, found that she was unable to chew it and then spat it out.
Although when questioned further at her deposition she speculated

---

     [13] To be sure, the Court of Appeals has not found the two
claims to be identical, see, e.g., Jarvis v. Ford Motor Co., 283
F.3d 33, 62-63 (2d Cir. 2002), but that is not significant for
the point that we address here.

33

that it was possible that she had swallowed some of the object
because of the shape of the item as she subsequently looked at it,
she had no memory of swallowing it and her account of what she did
is inconsistent with that possibility.[14] In short, given this
testimony, the trier of fact would have no basis, other than pure
speculation, to find that she ingested any foreign matter, much
less that such ingestion caused any physical harm to her. This is
fatal to her claim for physical injury. See, e.g., Ortega v. Trefz,
44 A.D.3d 916, 917, 845 N.Y.S.2d 73, 74 (2d Dep't 2007); Williams
v. White Castle Sys., Inc., 4 A.D.3d 161, 162, 772 N.Y.S.2d 35, 36
(1st Dep't 2004).

In the absence of a finding that the plaintiff ingested the
item, a trier of fact of course could not find that its ingestion
caused her any physical harm. Moreover, this conclusion is further
supported by the testimony of her treating doctor, who reported
that when he examined her two days after her flight, he found no
sign of physical injury other than a mild rash, which he never
linked to exposure to a food item. Indeed, even though he chose to
rely on plaintiff's account that she had unknowingly placed a piece
of lizard in her mouth, he attributed her reported problems to a

---

[14] If she was unable to chew the item, she presumably could
not have swallowed a portion of it and spat out the rest.

psychological reaction to the event, and referred her for psychiatric treatment. Still further support for the absence of a triable case on causation of physical injury is plaintiff's conceded history of virtually identical gastric problems resulting from her pre-existing stomach issues and from her apparent failure to comply with medically-imposed dietary restrictions. See, e.g., Iannotti, 225 A.D.2d at 991, 639 N.Y.S.2d at 538 (rejecting causation proof for heart palpitations absent competent medical testimony and in view of pre-existing heart condition).

As for plaintiff's physical symptoms -- including bloating, diarrhea and a rash -- she would presumably argue (although she does not do so explicitly) that, even if not caused by the ingestion of a piece of lizard, these symptoms were at least potentially attributable to her psychological shock at the presence of the foreign item in her mouth. For support she would presumably invoke the testimony of Dr. Manes, who, also not very clearly, appeared to attribute these reported symptoms -- which (aside from a rash) he neither observed nor verified -- to the emotional impact of the experience.

On the current record, a trier of fact could not credit such an assertion. There is no medical evidence that fright or shock can

cause a rash or bloating or diarrhea, much less that it did so in plaintiff's case. Indeed, Dr. Manes offered no explanation for such a link and did not even clearly opine in his deposition that there was one, since he found no evidence of physical injury.[15] In addition, and quite significantly, plaintiff conceded (after an initial denial) that she had suffered from bloating and diarrhea for years before the incident -- both before and after her gall bladder surgery -- and that she had been placed on a strict diet, which apparently excluded a number of ingredients that were present in the airplane meal and that were likely to cause this reaction.[16] In short, any causal linkage is so speculative as to preclude liability. See, e.g., Brown v. City Sam Rests., Inc., 246 A.D.2d 301, 301, 666 N.Y.S.2d 409, 409-10 (1st Dep't 1998); Valenti, 207 A.D.2d at 341, 615 N.Y.S.2d at 85. As one court recently observed in granting summary judgment for the defendant in a food-ingestion case, "Evidence is insufficient to support the plaintiff's case if

---

[15] Dr. Manes also cannot competently testify to causation of physical injury in plaintiff's case since he was largely ignorant of her pertinent medical history. (E.g., Manes Dep. at 40, 48-49, 51-52).

[16] We note that Dr. Manes confirmed that over the years he had repeatedly warned plaintiff to observe a diet in order to minimize or prevent such gastric problems. (Manes Dep. at 67-69). Plaintiff indicated in her testimony that she did not consistently follow such a diet despite the warnings of her physicians. (Pl.'s Dep. at 69; 2d Pl.'s Dep. at 31).

it only 'shows the illness was produced by one of several possible causes from any one of which alone it could have just as reasonably and probably resulted.'" Bunkley-Claybrooks v. Shelly's of New York, 2009 WL 2486046, *4 (S.D.N.Y. Aug. 14, 2009) (quoting Singer v. Krasne, 34 N.Y.S.2d 236, 236 (App. Term 1941)).

Plaintiff's showing of causation of physical injury fails as a matter of law. Her intestinal symptoms did not differ from her past history and were no different from what was predictable given her apparent consumption of string beans and possible ingestion of green and red peppers, black pepper, peas and carrots and rice, all of which may have been in her airplane meal. Moreover, there is not a shred of competent evidence that her emotional distress caused her to have a rash.

In sum, plaintiff cannot recover for any form of physical injury in this case. There remains the question of whether she may potentially recover for emotional distress alone.

As noted, the New York courts have recognized the potential viability of a claim for emotional distress arising from the breach of a duty to the plaintiff. See pp. 28-33, supra. Since there is a triable dispute as to whether plaintiff put a foreign object in her

mouth, then spat it out and saw what she reasonably believed was a part of a lizard or other animal part, it is at least possible for a trier of fact to find that she suffered some transient upset or emotional distress.[17] As for the requisite "guarantee of genuineness" of claims for psychological injury, plaintiff has proffered the testimony of Dr. Manes, who observed signs of anxiety two days after the incident and instructed plaintiff to use a tranquilizer for it. (Manes Dep. at 45-47, 53).[18] That scenario, if found by the trier of fact, would permit a recovery -- presumably modest -- for the injury.[19]

Finally, plaintiff is apparently seeking to recover for what

---

[17] To the extent that plaintiff apparently contends that she has suffered permanent psychological injury as a result of this incident (Pl.'s Dep. at 61-62), the record is bare of competent support for that contention, and hence such a claim cannot be tried.

[18] Dr. Manes referred plaintiff for psychiatric treatment in January 2005 (Manes Dep. at 54), but he testified that he made this reference because plaintiff had recently begun suffering from "a little depression" and was losing sleep. (Id.). Since these problems surfaced nearly eighteen months after the incident, there is no basis (much less a guarantee of genuineness) to attribute them to the food incident.

[19] We note that defendants, unlike Overhill, have not sought dismissal on the basis of plaintiff's refusal of the offer by the cabin crew to give her custody of the supposed foreign item, thus leading to its disposal by the airline. What significance, if any, her choice not to retain the item has for plaintiff's claims would presumably be for the trier of fact to decide.

she contends are substantial lost earnings as a result of the closure of her spa business, as well as out-of-pocket medical expenses. (Defs.' R. 56 Statement, Ex. I -- Pl.'s Answers to Overhill Interrogs. # 25(e) & (f)).   Challenged by defendants on this motion (Defs' R.56 Mem. at 11), she offers not a shred of evidence to support the lost-income claim.[20] As for expenses, she conceded at her deposition that she did not know how much she had spent as a result of the incident and that she kept no records of such expenditures. (Pl.'s Dep. at 67; 2d Pl.'s Dep. at 38-39). Accordingly, she will not be permitted to pursue such a claim for relief at trial.


2. <u>As Against Overhill</u>


Defendants (or at least the airline) seek a declaration of their entitlement to indemnification and representation by Overhill. Although they may ultimately prevail on this claim, the record is insufficient to justify such a finding as a matter of law. Indemnification -- whether common-law or contractual -- would

---

[20] As noted, plaintiff offered three different version of the facts concerning the impact of the incident on her spa business, and apparently has no documents reflecting any losses (or lack of losses) for what appears to have been at best a start-up business.

be available if it were established that the meal in question and its alleged foreign contaminant were supplied by Overhill. However, there is a triable issue because plaintiff's description of the meal that she was served appears not to correspond to the types of chicken dinners that American may have ordered from Overhill for the flight in question. Thus, plaintiff testified that her meal was supplied after the cabin crew had initially run out of the standard chicken dinners and that the meal consisted of small pieces of chicken rather than an uncut breast and included string beans but no rice, whereas the Overhill meals apparently had uncut chicken breasts, rice and peas and carrots. Although it is entirely plausible that plaintiff was simply mistaken in recalling the details of her meal, a trier of fact could credit her testimony and on that basis find that the meal did not originate with Overhill.

In sum, this triable issue precludes us from granting summary judgment for the airline on its indemnification claims.

<u>CONCLUSION</u>

For the reasons noted, the summary-judgment motions of plaintiff and the third-party defendant are denied. Defendants' summary-judgment motion is granted to the extent of limiting

plaintiff to a claim for temporary emotional distress arising from

her alleged encounter with a foreign object in her airline meal.

**Dated: New York, New York**
**December 16, 2009**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Memorandum and Order have been mailed today
to:

Satish K. Batia, Esq.
Batia & Associates, P.C.
38 West 32nd Street, #1511
New York, New York 10001

Kimberly M. Jagodzinski, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, New York 10017-5639

Kenneth Joseph Gormley, Esq.
Shelowitz & Associates, PLLC
11 Penn Plaza
16th Floor
New York, NY 10001

Sung Hee Koh, Esq.
Michael Vincent DiMartini, Esq.
Robert Joseph Soffientini, Esq.
Cohen, Kuhn & Associates
Two Park Avenue South, 6th Floor
New York, New York 10016-5602

41